# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA PANAMA CITYDIVISION

**MELISSA E. CHANDLER,**

> **Plaintiff,**

**vs.**                                                    **Case No. 5:17cv175-CAS**

**NANCY A. BERRYHILL, Acting Commissioner of Social Security,**

> **Defendant.**

_____/

## MEMORANDUM OPINION AND ORDER

This Social Security case was referred to the undersigned upon consent of the parties, ECF No. 5 by Chief United States District Judge M. Casey Rodgers.  ECF No. 6.  It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Acting Commissioner (Commissioner) of the Social Security Administration denying Plaintiff's application for a period of disability and Disability Insurance Benefits (DIB) pursuant to Title II of the Social Security Act.  *See* ECF No. 1.  After careful consideration of the record, the decision of the Commissioner is reversed and remanded for further proceedings.

## I.  Procedural History and Facts

On November 20, 2013, Plaintiff filed an application with the Social Security Administration for a period of disability and disability insurance benefits under Title II, alleging disability beginning February 6, 2013. Tr. 156-59.[1]  Plaintiff alleged disability citing rheumatoid arthritis, disc disease, fibromyalgia, heart condition, and high cholesterol.  Tr. 182.

The claim was denied initially on March 26, 2014, and upon reconsideration on September 18, 2014.  Tr. 97-99, 106-11.  On March 14, 2016, a video hearing was held before Administrative Law Judge (ALJ) Jim Beeby, who presided from Knoxville, Tennessee.  Tr. 30-52.  Plaintiff appeared in Panama City, Florida, with counsel.  Impartial vocational expert Susan Thomas also testified.

On May 18, 2016, the ALJ issued a decision finding Plaintiff is not disabled and denying the application for disability benefits.  Tr. 17-29.  The Appeals Council denied Plaintiff's request for review.  Tr. 1-6.  Thus, the decision of the ALJ became the final decision of the Acting Commissioner and is ripe for review.  Accordingly, on July 3, 2017, Plaintiff, appearing through counsel, filed a complaint for judicial review pursuant to 42 U.S.C.

---

[1]  Citations to the transcript/administrative record (ECF No. 13) shall be by the symbol "Tr." followed by a page number that appears in the lower right corner of each page.

§§ 1381, *et seq.,* and 42 U.S.C. § 405(g). *See* ECF No. 1. Respondent filed an answer on December 1, 2017, ECF No. 12, and both parties filed memoranda in support of their positions. ECF Nos. 15, 16. On Plaintiff's motion, she was given leave to reply to the Commissioner's memorandum, ECF No. 18, and she filed a reply on March 23, 2018. ECF No. 19.

### A. The Hearing

At the hearing held March 14, 2014, Plaintiff, age 46 at the time of the hearing, testified that she lives with her husband and her father, who recently came to stay. Tr. 33-34. She earned a GED in 2006 and last worked in February 2013. Tr. 35. She testified that she quit her job due to pain in her shoulder and knees and swelling in her feet and hands. Tr. 47. Her previous employment was as a clerk or in food services at a grocery store in both the deli and the seafood and meat department. Tr. 35-37. She testified she smokes a half pack of cigarettes a day and is trying to quit. Tr. 37.

Plaintiff described her typical day as one in which she wakes up and takes a pain pill and waits about 20 minutes to get up. She then makes and drinks coffee and takes her other medications. She lets the dogs out and, if she is having a good day, she will help her husband with the laundry. Other than that, she testified, she "just lay[s] around." Tr. 38. She

said her husband does the other household chores. *Id.* On a bad day, she said, she cannot get out of bed at all due to the pain, even after taking a pain pill. Tr. 44. When this happens, her back, knees, and hands hurt. Tr. 45. She said this happens about three times a month. *Id.*

Plaintiff testified that her husband helps her into and out of the shower, but she can still wash her hair and body. Sometimes he has to help her dry off and put her clothes on if her shoulder is bothering her. Tr. 39. She testified she can walk for about ten minutes and can stand for about 30 minutes to one hour at a time, depending on how many pain pills she has taken. *Id.* She said she cannot lift a five-pound bag of sugar and when she drinks her coffee, she must use both hands. *Id.* She testified that she drops things from her right hand "all the time" due to lack of hand strength. Tr. 43-44.

Plaintiff testified the physical problem that most keeps her from working is her right hand, which became worse about a year prior. Tr. 40. She said her hand swells and her fingers cramp making it almost impossible to move them. *Id.* Her next most problematic condition is both knees, which frequently swell so badly she cannot walk. Tr. 40-41. The last time she could not walk due to that condition was May 2013. Tr. 41. Her left hand began to bother her in May 2013, and also swells but not as

badly as in her right hand. She learned from a doctor that she had rheumatoid arthritis. Tr. 41-42. She testified that she is in chronic pain all the time due to fibromyalgia, which began "bothering her" in 2014 and for which she takes Flexeril. Tr. 42.

When asked if there were other problems, Plaintiff said no, but on questioning by her counsel, she explained that she had swelling in her left ankle and foot which keeps her from walking when it flares up. She has had five flare ups. Tr. 42-43. She also described memory problems that began in 2013. Tr. 46.

The vocational expert testified that Plaintiff's prior employment was as gas station cashier, described as DOT § 211.462-010, light, unskilled, SVP of 2; Deli counter worker, DOT § 317.664-010, medium, unskilled, SVP of 2; and as a seafood counter worker, DOT § 222.684-010, medium, unskilled, SVP of 2.[2] The ALJ posed a hypothetical question describing an

---

[2] DOT refers to the Dictionary of Occupational Titles (4th Ed., Rev. 1991), which is one of the examples of sources that the ALJ may rely on for job information. *See* SSR 00-4p; 20 C.F.R. § 404.1566(d). The ALJ may also rely on a vocational expert or other specialist. *See* § 404.1566(e). An SVP (Specific Vocational Preparation) of 1 means "short demonstration only." Dictionary of Occupational Titles (DOT) (4th ed., rev. 1991), Appendix C: Components of the Definition Trailer, § II, SVP. An SVP of 2 means "[a]nything beyond short demonstration up to and including 1 month." *Id.* "[SVP] is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Id.* Unskilled work corresponds to an SVP of 1 and 2. SSR 00-4p, 2000 SSR LEXIS 8, at *8 (Dec. 4, 2000). "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). Further, unskilled work is work

individual of the same age, education, and prior work experience as that of Plaintiff, and who can lift and carry, push and pull twenty pounds occasionally and ten pounds frequently with normal breaks in an eight-hour day. The individual can sit for six hours and stand and/or walk for six hours; can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can occasionally balance, stoop, kneel, crouch, and crawl; can tolerate occasional exposure to vibration; can tolerate occasional right upper extremity handling and fingering and frequent left upper extremity handling and fingering. When asked if such an individual could perform Plaintiff's past work as actually or generally performed in the national economy, the vocational expert testified that the person could not do so. Tr. 49.

The vocational expert testified there was other light, unskilled work that this individual could perform, citing rental and counter clerk, DOT § 295.357-018, light, unskilled, with SVP of 2, with approximately 60,000 jobs in the national economy; usher and lobby attendant, DOT § 344.677-014, light, unskilled, SVP of 2, with approximately 25,000 jobs in the

------

involving understanding, remembering, and carrying out simple instructions; making simple work-related decision; dealing with changes in a routine work setting; and responding appropriately to supervision, co-workers, and usual work situations. SSR 85-15, 1985 SSR LEXIS 20, at *10-11 (1985).

national economy; and packing and machine filling machine tender, DOT § 520.667-066, light, unskilled work, SVP of 2, with approximately 85,000 jobs in the national economy.  Tr. 49-50.

The ALJ posed a second hypothetical scenario with the same facts as above, but with the addition that the individual would miss more than two days of work a month due to impairments or treatment.  The vocational expert testified that there would be no work for that individual.  Tr. 50.  The vocational expert testified that her testimony was consistent with the DOT. *Id.*

### B. The Decision of the Administrative Law Judge

In the decision issued on May 18, 2016, the ALJ made several findings pertinent to this review.  Tr. 17-24.  The ALJ found that Plaintiff met the insured status requirement on June 30, 2015.  Tr. 19.  She was 45 years old, defined as a younger individual, on the date last insured.  Tr. 23. She has at least a high school education and can communicate in English. *Id.*

The ALJ found Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of February 6, 2013, through the date last insured of June 30, 2015.  Tr. 19.  The ALJ found that as of the date last insured, Plaintiff had the following severe impairments:

rheumatoid arthritis, bilateral knee osteoarthritis, fibromyalgia, and coronary artery disease. *Id.*

The ALJ found that Plaintiff's medically determinable impairments of hypertension, hyperlipidemia, asthma by history, anxiety, and depression, considered singly and in combination, did not cause more than minimal limitation in the claimant's ability to perform basic mental work and were therefore nonsevere. Tr. 20.

The ALJ found that Plaintiff had "no to mild" limitation in the functional areas of daily living, social functioning, and concentration, persistence or pace. *Id.* The ALJ further found that Plaintiff experienced no episodes of decompensation of extended duration. *Id.* The ALJ gave no weight to the opinion of Dr. Julian Salinas, a consultative examiner who diagnosed Plaintiff with major depressive disorder based on a single examination with no functional analysis. Tr. 20 (citing records at Tr. 397-400). The ALJ concluded that Plaintiff's medically determinable mental impairments cause no more than mild limitation in any of the first three functional areas, and no episodes of decompensation of extended duration in the fourth area, and thus were nonsevere. Tr. 20. The ALJ found that Plaintiff did not have any impairment or combination of impairments that met or medically equaled

the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

In determining Plaintiff's residual functional capacity (RFC), the ALJ found that she could perform light work, lift and carry, push and pull twenty pounds occasionally and ten pounds frequently, with normal breaks in an eight-hour workday. She can sit for six hours and stand and/or walk for six hours; can never climb ladders, ropes, or scaffold; can occasionally climb ramps and stairs; can occasionally balance, stoop, kneel, crouch, and crawl; and can tolerate occasional exposure to vibration; and can tolerate right upper extremity handling and fingering and frequent left upper extremity handling and fingering.[3] Tr. 20-21.

In reaching this RFC, the ALJ concluded that although Plaintiff's medically determinable impairments could reasonably be expected to

---

[3] Residual functional capacity is the most a claimant can still do despite limitations. 20 C.F.R. § 404.1545(a)(1). It is an assessment based upon all of the relevant evidence including the claimant's description of his or her limitations, observations by treating and examining physicians or other persons, and medical records. *Id.* The responsibility for determining claimant's RFC lies with the ALJ. 20 C.F.R. § 404.1546(c); *see* Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) (rescinded eff. Mar. 27, 2017) ("The term '*residual functional capacity assessment*' describes an adjudicator's finding about the ability of an individual to perform work-related activities. The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.").

cause the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. Tr. 21. The ALJ found that Plaintiff's complaints exceed what is reasonably expected in light of objective findings.

The ALJ cited radiological testing of Plaintiff's right and left wrists, right shoulder, left and right knees, left fibular, and ultrasound of the knees, feet, and hands, concluding that they do show some degenerative changes but not to the extent or severity alleged by Plaintiff. *Id.* (citing records at Tr. 403-19, 448-49, 491). The ALJ cited Dr. Amir Agha's reports that Plaintiff had some limited range of motion in the hands, knees, and shoulders, but not the kind of severe restriction expected in light of the severity of Plaintiff's claims in her testimony. Tr. 22 (citing records at Tr. 434-55 and Tr. 458-83). The ALJ gave little weight to the opinion of Dr. Krzysztof Lewandowski, a consultative examiner, who indicated that Plaintiff had no significant impairment-related limitations, which ignored the documented history of rheumatoid arthritis and fibromyalgia. *Id.*

The ALJ found that there were no contrary opinions to those of state agency consulting physician Dr. Lionel Henry, who "essentially opined" that Plaintiff has the following limitations: lifting a maximum of about twenty

pounds occasionally and ten pounds frequently; and standing and/or walking about six hours in an eight-hour workday. *Id.* (citing records at Tr. 73-89). Based on the treatment histories of Dr. Hulon Crayton, Dr. Agha, and Dr. Roger Gamad, the ALJ added the limitations relating to Plaintiff's difficulty with postural activities and wrist and hand motions. *Id.* (citing records at Tr. 316-32, Tr. 403-19, Tr. 420-32 (Crayton); Tr. 434-55, Tr. 458- 83 (Agha); and Tr. 484-500 (Gamad)).

Based on this RFC, and on the testimony of the vocational expert, the ALJ found Plaintiff was unable to perform any past relevant work, but could perform other work that exists in significant numbers in the national economy. Tr. 22, 23. That representative work was found to be, as testified by the vocational expert and set forth above, rental clerk, usher, and packing and machine tender.

In conclusion, the ALJ found, based on the testimony of the vocational expert and the record, that Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy and that Plaintiff was "not disabled" under section 216(i) and 223(d) of the Social Security Act through June 30, 2015, the date last insured. Tr. 23-24.

## II. Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. 42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).[4] The Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner, Bloodsworth, 703 F.2d at 1239, although the Court must scrutinize the

---

[4] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' " Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

entire record, consider evidence detracting from the evidence on which the Commissioner relied, and determine the reasonableness of the factual findings.  Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986).  Review is deferential, but the reviewing court conducts what has been referred to as "an independent review of the record."  Flynn v. Heckler, 768 F.2d 1273, 1273 (11th Cir. 1985).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1509 (duration requirement).  Both the "impairment" and the "inability" must be expected to last not less than 12 months.  Barnhart v. Walton, 535 U.S. 212 (2002).  An individual is entitled to disability insurance benefits if he or she is under a disability prior to the expiration of his insured status.  *See* 42

U.S.C. § 423(a)(1)(A); <u>Moore</u>, 405 F.3d at 1211; <u>Torres v. Sec'y of Health & Human Servs.</u>, 845 F.2d 1136, 1137-38 (1st Cir. 1988); <u>Cruz Rivera v. Sec'y of Health & Human Servs.</u>, 818 F.2d 96, 97 (1st Cir. 1986).

Pursuant to 20 C.F.R. § 404.1520(a)(4)(i)-(v), the Commissioner analyzes a claim in five steps. Under the first step, the claimant has the burden to show that she is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At the second step, the claimant must show she has a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii). Step two is a threshold inquiry, and the ALJ does not go on to step three if the claimant fails to meet step two, but will find claimant is "not disabled." <u>McDaniel v. Bowen</u>, 800 F.2d 1026, 1032 (11th Cir. 1986); 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the claimant must show that her severe impairment or combination of impairments meets or equals the criteria in the Listings of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant cannot meet or equal one of the listings, the ALJ considers at step four whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. § 404.1520(a)(4)(iv). If the claimant establishes she cannot perform her past relevant work, the burden shifts to the Commissioner at step five to show that significant numbers of jobs exist in the national economy that the claimant can perform in light of her RFC,

age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),
404.1520(d), (g); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004);
Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999); McMahon v. Comm'r,
Soc. Admin., 583 F. App'x 886, 887 (11th Cir. 2014) (unpublished).  If the
Commissioner carries this burden, the claimant must prove that he or she
cannot perform the work suggested by the Commissioner.  Hale v. Bowen,
831 F.2d 1007, 1011 (11th Cir. 1987).

Plaintiff bears the burden of proving that she is disabled and,
consequently, is responsible for producing evidence in support of her claim.
*See* 20 C.F.R. § 404.1512(a); Moore, 405 F.3d at 1211.  The responsibility
of weighing the medical evidence and resolving any conflicts in the record
rests with the ALJ.  *See* Battle v. Astrue, 243 F. App'x 514, 523 (11th Cir.
2007) (unpublished).  The opinion of the claimant's treating physician must
be accorded considerable weight by the Commissioner unless good cause
is shown to the contrary.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.
1997).  This is so because treating physicians "are likely to be the medical
professionals most able to provide a detailed, longitudinal picture of [the
claimant's] medical impairment(s) and may bring a unique perspective to
the medical evidence that cannot be obtained from the objective medical
findings alone or from reports of individual examinations, such as

consultative examinations or brief hospitalizations." 20 C.F.R.

§ 404.1527(c)(2).[5] "This requires a relationship of both duration and

frequency." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). "The

Secretary must specify what weight is given to a treating physician's

opinion and any reason for giving it no weight, and failure to do so is

reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053. (11th Cir.

1986).

The ALJ may discount the treating physician's opinion if good cause

exists to do so. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986).

Good cause may be found when the opinion is "not bolstered by the

evidence," the evidence "supported a contrary finding," the opinion is

"conclusory or inconsistent with [the treating physician's] own medical

records," the statement "contains no [supporting] clinical data or

information," the opinion "is unsubstantiated by any clinical or laboratory

findings," or the opinion "is not accompanied by objective medical evidence

or is wholly conclusory." Lewis, 125 F.3d at 1440; Edwards v. Sullivan, 937

F.2d 580, 583-84 (11th Cir. 1991) (citing Schnorr v. Bowen, 816 F.2d 578,

---

[5] This provision applies to claims filed before March 27, 2017. *See* 20 C.F.R.
§ 404.1527, "Evaluating opinion evidence for claims filed before March 27, 2017." For
claims filed after that date, the applicable provision is 20 C.F.R. § 404.1520c, titled
"How we consider and articulate medical opinions and prior administrative medical
findings for claims filed on or after March 27, 2017."

582 (11th Cir. 1987)). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight to the extent they are supported by clinical or laboratory findings and are consistent with other evidence as to a claimant's impairments. Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). The reasons for giving little weight to the opinion of the treating physician must be supported by substantial evidence, Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992), and must be clearly articulated. Phillips, 357 F.3d at 1241.

Generally, more weight is given to the opinion of a specialist "about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(2), (5)[6]; *see also* Somogy v. Comm'r of Soc. Sec., 366 F. App'x 56, 65 n.13 (11th Cir. 2010) (unpublished) (" 'Specialized knowledge may be particularly important with respect to a disease such as fibromyalgia that is poorly understood within much of the medical community," and thus rheumatologists' opinions were entitled to greater weight than those of other physicians." (quoting Benecke v. Barnhart, 379 F.3d 587, 594 n.4 (9th Cir. 2004))). Although a claimant may provide a statement containing a treating physician's opinion of his remaining capabilities, the ALJ must evaluate such a statement in light of

---

[6] *See* note 5, *supra*.

the other evidence presented and the ALJ must make the ultimate determination of disability.  20 C.F.R. §§ 404.1512, 404.1513, 404.1527, 404.1545.

Opinions on issues such as whether the claimant is unable to work, the claimant's RFC, and the application of vocational factors, "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of the case; *i.e.*, that would direct the determination or decision of disability."  20 C.F.R. § 404.1527(d); *see* Bell v. Bowen, 796 F.2d 1350, 1353-54 (11th Cir. 1986).  Although a claimant may provide a statement containing a treating physician's opinion of her remaining capabilities, the ALJ must evaluate such a statement in light of the other evidence presented and the ALJ must make the ultimate determination of disability. *See* 20 C.F.R. §§ 404.1512, 404.1513, 404.1527, 404.1545.

## III. Analysis

Plaintiff raises two challenges to the decision of the ALJ.  Plaintiff first claims that the ALJ reversibly erred by ignoring the pain standard when evaluating Plaintiff's testimony concerning the severity and limiting effects of her impairments and by failing to properly consider the treating physicians' medical records documenting her impairments and symptoms.

ECF No. 15 at 16.  Next, Plaintiff contends that the ALJ reversibly erred by failing to properly consider the effect of the combination of her impairments in the step-five analysis and failing to include the combination of restrictions in the hypothetical question posed to the vocational expert.  ECF No. 15 at 26.  Plaintiff also claimed that the ALJ reversibly erred in failing to recognize Plaintiff's obesity as a medically determinable severe impairment, but that claim was abandoned in Plaintiff's reply memorandum. ECF No. 15 at 28; ECF No. 19 at 2.

### A. Evaluation of Plaintiff's subjective reports of pain in light of the record.

Although Plaintiff frames this issue primarily as one of ALJ error in ignoring the pain standard and failing to provide sufficient reasons for rejecting Plaintiff's testimony, the substance of the claim also goes to the ALJ's alleged failure to properly evaluate and give required weight to the evidence of Plaintiff's diagnoses and treatment by her medical specialists. The ALJ recognized that Plaintiff asserts she is disabled and unable to work primarily because of chronic pain and that her daily activities are restricted.  The ALJ cited Plaintiff's testimony about pain and swelling in her hands, knees, left foot, and ankle that prohibit her from walking more than twenty minutes at a time or standing more than thirty to sixty minutes at a time.  Tr. 21.  The ALJ found that Plaintiff had the severe impairments of

rheumatoid arthritis, bilateral knee osteoarthritis, fibromyalgia, and coronary artery disease, but concluded that her statements concerning the intensity, persistence, and limiting effect of the symptoms caused by these impairments are not entirely consistent with the medical evidence and other evidence.  *Id.*

The ALJ noted, generally, the radiological testing of Plaintiff's wrists, shoulder, knees and fibular, and ultrasound testing of her feet and hands, concluding that the testing does not show degenerative changes sufficient to support the severity of the pain and effects of the impairment testified to by Plaintiff.  *Id.*  The specifics of those tests are not discussed in the decision.  In support of the finding that Plaintiff's testimony concerning the intensity, persistence, and limiting effects of her symptoms is not consistent with the medical evidence and other evidence, the ALJ also cited records of Dr. Amir Agha, Dr. Roger Gamad, and Dr. Hulon Crayton.  Tr. 22.  The ALJ's discussion of the treating, consultative, and non-examining physicians' records and opinions is, in toto, the following:

> There was some limited range of motion in the hands, knees, and shoulders in Dr. Agha's reports, (Exhibits 14F and 16F), but not the kind of severe restriction expected in light of the severity of the claimant's testimony.  Dr. Lewandowski noted full range of motion at his examination.  (Exhibit 7F).
>
> Dr. Lewandowski, a consultative examiner, essentially opined that the claimant has no significant impairment-related

limitations.  (Exhibit 7F).  This ignores the documented history of rheumatoid arthritis and fibromyalgia, and is therefore given little weight.

The reports of the state agency consulting physicians have [sic] considered pursuant to 20 CFR 404.1512(b)(6), 20 CFR 404.1527(f) and Social Security Ruling 96-6p.  Dr. Henry, a state agency physician, essentially opined that the claimant has the following limitations: lifting a maximum of about twenty pounds occasionally and ten pounds frequently; standing and/or walking about six hours in an eight-hour workday; and sitting about six hours in an eight-hour workday.  (Exhibit 3A). There are no contrary opinions from any of the other treating or examining sources.  However, the treatment history from Dr. Crayton (Exhibits 4F, 12F, and 13F), Dr. Agha (Exhibits 14F and 16F), and Dr. Gamad (Exhibit 17F), all indicate the claimant's impairments cause difficulty with postural and wrist and hand motions, thus supporting a finding that the claimant has the following additional limitations:

> can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can occasionally balance, stoop, crouch, and crawl; and can tolerate occasional exposure to vibration; can tolerate occasional right upper extremity handling and fingering and frequent left upper extremity handling and fingering.

Tr. 22.  These additional limitations were added to the limitations proposed by the non-examining agency physician to comprise the RFC determined by the ALJ.  *Id.*

Although the ALJ concluded that the notes of Amir Agha, M.D., a rheumatologist with the Bay Arthritis Institute, showed "some limited range of motion" in hands, knees, and shoulders, but not the kind of severe restriction expected in light of Plaintiff's testimony, the specifics of

Case No. 5:17cv175-CAS

Dr. Agha's examinations or treatment of Plaintiff were not discussed in any detail.  Nor were the examinations or treatment notes of Dr. Crayton or Dr. Gamad.

Dr. Agha began seeing Plaintiff after her first rheumatologist, Dr. Hulon Crayton, passed away.  Plaintiff began seeing Dr. Crayton in 2013 (August, September, and December), then continued to see him in 2014 (February, April, August, and October), and 2015 (January).  Tr. 317-26, 383-425.

Plaintiff was initially referred to Dr. Crayton by Roger Gamad, M.D., of the Family Clinic, who saw Plaintiff in 2013 for back pain, knee pain, swelling, wrist pain, and foot pain.  Tr. 345.  An examination on May 15, 2013, disclosed tenderness in her left shoulder and some swelling of her hands, left fingers, and elbow.  Tr. 345.  In a follow-up visit for Plaintiff's laboratory work on May 20, 2013, Dr. Gamad found her rheumatoid latex agglutination test was very positive and noted that she would be referred to rheumatologist Dr. Hulon Crayton.  Tr. 342.

Plaintiff saw Dr. Crayton on August 9, 2013, and examination notes show that Plaintiff, who was obese, was diagnosed with rheumatoid arthritis (RA) based on a strongly positive rheumatoid factor.  Tr. 317-18.  Her examination also revealed marked swelling and tenderness of the left wrist

with 2+ synovitis and marked pain on motion and limitation of motion due to pain. Tr. 317. Both knees had 1+ tenderness and swelling, and her right wrist had 1+ synovitis. Tr. 317-18. She was referred for laboratory studies and a treatment plan was formulated to include methotrexate and prednisone for her RA. Tr. 318.

On August 28, 2013, Plaintiff saw Dr. Crayton and reported a worsening of her pain. Her examination revealed marked swelling and tenderness in both wrists and knees. Tr. 320. It was noted that she had "a great deal of pain involving the left knee" and a 2+ effusion in the knee. Tr. 321. Her diagnosis of "very active RA" was noted based on another "strongly positive rheumatoid factor." Tr. 320, 321. Further studies were planned, as was future use of methotrexate, and she was kept on prednisone. Tr. 320. In her visit on September 25, 2013, Dr. Crayton's notes indicate that Plaintiff's weight had increased. Tr. 322. She had been on both prednisone and methotrexate and was having a good response, but relief was diminishing. She reported mouth ulcers and leg cramps after being on methotrexate for a month. Dr. Crayton noted that if she continued to have problems with the medication, more "aggressive treatment with a biologic agent" is a consideration. *Id.* On that date, her joint exam was

"surprisingly benign" without a great deal of synovitis and tenderness. Tr. 323.

In her follow-up examination on November 6, 2013, Plaintiff reported she was getting worse and complained of pain in her right shoulder, with ongoing pain and stiffness in her large and small joints "that can be incapacitating at times." Tr. 324. Office notes indicate she has not responded to appropriate treatment for RA. *Id.* An ultrasound of her shoulder was ordered, and notes from December 4, 2013, indicate the ultrasound showed three primary rotator cuff tendons with evidence of tendonitis with inflammation. Tr. 326. At her December visit, Plaintiff complained of pain in her knees and her left forearm, but her shoulder was better. *Id.* Her joint examination was fairly benign, without a great deal of swelling or tenderness. Tr. 327. The notes indicate that because she was not responding to methotrexate, she had been taking an alternative that caused nausea and vomiting. Tr. 326. Her fibromyalgia findings were also noted. She was prescribed Flexeril to use at night and a trial of Lyrica was a possible consideration. *Id.*

On February 24, 2014, Dr. Crayton's office notes indicate that Plaintiff complained of pain in her left wrist, hands, left knee, right ankle, and foot. Tr. 380. She had marked synovitis of her left wrist, left knee and ankle

tenderness. *Id.* Her RA was "not well controlled." *Id.* Improvement was shown in her April 9, 2014, visit, but she had left wrist tenderness on flexion and extension. Tr. 383. She was continued on Plaquenil and prednisone was to taper off as tolerated. *Id.*

After Plaintiff had been continued on prednisone, Methotrexate, and Plaquenil, she complained of nausea and fatigue in a July 2014 visit to Dr. Crayton, and cited mild pain and edema in her left wrist, worsening swelling in he left knee, and new onset in her right knee. Tr. 386. Moderate synovitis and tenderness on flexion and extension in her left wrist were noted. *Id.* Her RA was assessed as "flaring uncontrolled." *Id.* Notes show Plaintiff continued to be obese. *Id.*

In August 2014, Plaintiff saw Dr. Crayton for a flare up of her RA. She had been prescribed Enbrel and continued to take methotrexate and Plaquenil. Tr. 393. Plaintiff complained of pain and edema in her right wrist and both hands and knees. The notes indicate that ultrasounds showed tendonitis in her right knee and a probable tear of her lateral meniscus and spurs in her left knee. *Id.* Both knees were tender with flexion and extension and had moderate crepitus. She was diagnosed with synovitis in her proximal interphalangeal joints of both hands. *Id.*

In October 2014, office notes show that Plaintiff continued to be obese. Tr. 424. Plaintiff reported nausea and mild fatigue after taking her methotrexate, and she reported feeling greater stress. *Id.* Plaintiff reported pain in her left knee and left wrist. Examination revealed tenderness in her left wrist on flexion and extension, and mild synovitis in her metacarpophalangeal joints and her proximal interphalangeal joints. She had tenderness in her left knee on flexion and extension, with crepitus bilaterally, more moderate on the right. *Id.* She had completed therapy for her left leg and reported that she continued to do the exercises at home. *Id.* It was noted that her RA showed mild improvement with addition of Enbrel. The notes also show her diagnosis of osteoarthritis. She was continued on Enbrel, methotrexate and Plaquenil, and was prescribed Flexeril. *Id.*

She last saw Dr. Crayton in January 2015, at which time she reported some relief from steroid injections in October 2014. Tr. 421. She received another injection on this date. Osteoarthritis was noted in her lower extremities. Mild synovitis was noted in her wrist and proximal interphalangeal joints. *Id.* Her medications were continued. Tr. 422.

Plaintiff began seeing Dr. Agha, rheumatology specialist at Bay Arthritis, in July 2015. Plaintiff reported muscle aches, weakness, joint and

back pain, morning stiffness, sleep disturbances and fatigue.  Tr. 440.

Swelling in her extremities was not reported by Plaintiff, but was seen in

her right ankle.  Tr. 440, 441.  Her examination revealed limited range of

motion in her knees, but no swelling or tenderness.  Tr. 441.  Limited range

of motion was noted in her shoulders and her ankle.  As for her

fibromyalgia diagnosis, twelve of eighteen tender points were positive in

her musculoskeletal examination, along with limited range of motion, but

motor strength was found to be normal.  *Id.*  Plaintiff had a limited range of

motion in both hands, with tenderness in her second and fourth

metacarpophalangeal joints and proximal interphalangeal joints.  Synovitis

was found in her second and third metacarpophalangeal joints.  *Id.*  She

had bilateral carpometacarpal squaring in both hands.  Her elbows were

tender to palpitation in her bilateral epicondyles.  Plaintiff's right wrist

showed tenosynovitis.  *Id.*  Her diagnoses included rheumatoid arthritis,

primary fibromyalgia syndrome, osteoarthritis of the knee with pain, hand

joint pain, ankle and foot pain, and acute pain.  Tr. 445.

An August 2, 2015, ultrasound of Plaintiff's knees showed

calcification of the meniscus in her right knee and a small pocket of

inflammation in the lateral aspect of her left knee.  Some calcific tendonitis

was seen in the right patellar tendon.  Tr. 448.

At her visit on August 12, 2015, records show Plaintiff remained obese and had a blood pressure of 157/98. Tr. 476. On December 2, 2015, her RA diagnosis was amended to Seropositive Rheumatoid Arthritis. Tr. 471. On December 8, 2015, Plaintiff received a corticosteroid injection in her right knee. Tr. 467. No improvement was shown over prior examinations. In February 2016, Dr. Agha diagnosed Plaintiff with seropositive rheumatoid arthritis, long-term drug therapy, and osteoarthritis of the knee, and back spasms. Tr. 462. At that time, Plaintiff was taking hydrocodone for pain, prednisone, methotrexate, Flexeril, and a number of other prescribed medications. Tr. 460-61. At the December visit, Plaintiff reported night sweats, vision changes, joint pain, back pain, swelling in joints, morning stiffness, dactylitis, headaches, sleep disturbance, fatigue, bruising, depression, and anxiety. Tr. 461. Plaintiff was taking hydrocodone for pain management and had been receiving corticosteroid injections in her knees and an intramuscular Toradol injection. Tr. 464-66, 471. Plaintiff was also prescribed Norco and Lortab for pain by Dr. Gamad in 2015 and 2016. Tr. 486-89, 494, 496.

In finding that Plaintiff's testimony concerning the intensity, persistence, and limiting effects of her impairments is not "entirely consistent" with the medical and other evidence, the ALJ relied in part on

the report of Dr. Lionel Henry, a state agency non-examining physician who opined on September 17, 2014, that Plaintiff could lift a maximum of about twenty pounds occasionally and ten pounds frequently, and could sit and stand and/or walk for about six hours in an eight-hour workday.  Tr. 22 (citing records at Tr. 74-89).  In reaching this RFC opinion, Dr. Henry had before him, *inter alia*, the consultative examination rendered by Dr. Lewandowski.[7]  *See* Tr. 81.  In relying on Dr. Henry's opinion of Plaintiff's RFC, the ALJ stated, "There are no contrary opinions from any of the other treating or examining sources."  Tr. 22.

Plaintiff was given a consultative examination by Dr. Lewandowski on February 26, 2014.  Tr. 350-54.  Dr. Lewandowski referred to Plaintiff's rheumatoid arthritis but not her fibromyalgia diagnosis.  After a physical examination, Dr. Lewandowski noted that she "does not show signs of active inflammatory disease in her joints.  All joints have full ROM and I do not see any stiffness or swelling and her manual dexterity is normal.  She walks without a limp and does not need any assistive device for ambulation. . . .  Her functional ability does not seem to be impaired."  Tr. 351.  The ALJ considered Dr. Lewandowski's findings in a somewhat

---

[7] As discussed *infra*, the ALJ gave only little weight to Dr. Lewandowski's opinions because they ignored documented history of two of Plaintiff's severe impairments—rheumatoid arthritis and fibromyalgia.  *See* Tr. 22.

contrary manner, first citing the notation of full range of motion as indicating that Plaintiff's testimony of the severe restrictions caused by her impairments is not supported—but contrarily giving only "little weight" to Dr. Lewandowski's opinion that Plaintiff has no significant impairment-related limitations because it "ignores the documented history of rheumatoid arthritis and fibromyalgia."  Tr. 22.

Plaintiff contends that the severity of her fibromyalgia, rheumatoid arthritis, and osteoarthritis of her knees has been described by her treating physicians and that an examination of her longitudinal medical records shows that her symptoms have waxed and waned with frequent flare-ups, and are consistent with her testimony.  ECF No. 15 at 24.  Plaintiff contends that the records support her testimony that she is unable to work on a regular basis and that she is essentially incapacitated by her impairments at least three days a month.  *See* Tr. 45.  And, the vocational expert testified that if she misses on average more than two days a month, there is no work for her in the national economy.  *See* Tr. 50.  Plaintiff contends that the ALJ erred in failing to accord proper weight to the medical evidence of her treating physicians when evaluating whether the record supports Plaintiff's claims of the severity and effect of her impairments.

The ALJ gave only a brief, and essentially superficial, discussion of the medical records of Plaintiff's treating physicians. The ALJ is correct that no treating physician gave a contrary opinion concerning Petitioner's ability to lift twenty pounds occasionally and ten pounds frequently and to sit, stand and/or walk for six hours each in a workday. However, Petitioner's treating physicians were rheumatologists and did not, nor were they apparently requested to, provide an RFC evaluation. The only examining physician who offered an opinion specifically relating to Plaintiff's ability to function was Dr. Lewandowski, which the ALJ discounted due to his lack of familiarity with Plaintiff's "documented history of rheumatoid arthritis and fibromyalgia." Tr. 22.

The treating physicians did not provide a functionality evaluation or provide an RFC or functionality opinion concerning her ability to do the things that the non-examining and consultative physicians believed she can do. However, the treating physicians' medical records provide a longitudinal record of her symptoms, the waxing and waning of her joint swelling and synovitis, her osteoarthritis, and fibromyalgia, and her responses to a variety of medications and injections that have been tried in an effort to return Plaintiff to her ability to function. The ALJ's lack of an explanation, in any meaningful and significant detail, concerning how these

records do not support Plaintiff's testimony concerning the restrictions on her daily living caused by her severe impairments hampers this Court's effective and informed review of the decision.

By giving Dr. Lewandowski's opinions "little weight" because he ignored Plaintiff's documented history of rheumatoid arthritis and her properly diagnosed fibromyalgia, the ALJ has indicated that those severe impairments deserve closer scrutiny and consideration.  However, that closer scrutiny and consideration were lacking in the ALJ's decision despite the volume of treatment records covering close to three years.  Thus, while the ALJ has given lip service to the finding of severe impairments of rheumatoid arthritis and fibromyalgia, he has failed to analyze Plaintiff's fibromyalgia and rheumatoid arthritis-related symptoms in any meaningful way in light of the unique symptoms relating to those impairments.

The ALJ supported his finding that Plaintiff's complaints of intensity, persistence, and limiting effects of her symptoms were not borne out by the record primarily by stating:

> There was some limited range of motion in the hands, knees, and shoulders in Dr. Agha's reports, but not the kind of severe restriction expected in light of the severity of the claimant's testimony.  Dr. Lewandowski noted full range of motion at his examination.

Tr. 22.  This ignores the fact that, as noted earlier, the ALJ proceeded to

discount Dr. Lewandowski's opinions and to ignore the fact that Plaintiff's documented rheumatoid arthritis and fibromyalgia are conditions in which Plaintiff experiences flare-ups.  As the Court in Benecke v Barnhart noted, "One does not need to be 'utterly incapacitated' in order to be disabled." 379 F.3d 587, 594 (9th Cir. 2004) (citing Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).  Full range of motion, lack of synovitis, or intact motor function in any one examination does not provide substantial evidence that Plaintiff's severe systemic or other impairments do not cause the intensity, persistence or limiting effects as testified by Plaintiff.  *See cf.* Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) ("Nevertheless, full range of motion, lack of synovitis, and intact motor function provide no evidence that Ms. Swindle's systemic lupus could not give rise to the pain in her lower extremities and the dizziness she describes.").  These same considerations would apply equally to the systemic symptoms of rheumatoid arthritis and fibromyalgia.

Under Social Security Ruling SR 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p, which applies to the decision in this case, the ALJ must first determine if the claimant has a medically determinable impairment that could reasonably be expected to produce the

symptoms alleged by Plaintiff.[8]  SSR 16-3p, 2017 WL 5180304 (applicable

March 28, 2016), 82 Fed. Reg. 49462-03, 49468 & n.27, (republished Oct.

25, 2017).  The ALJ in this case found that Plaintiff's medically

determinable impairments could reasonably be expected to cause her

symptoms.  Tr. 21.  As for step two in evaluation of the intensity,

persistence, and limiting effects of a claimant's symptoms, the Eleventh

Circuit has explained:

> Step two is to evaluate the intensity and persistence of an
> individual's symptoms, such as pain, and determine the extent
> to which an individual's symptoms limit her ability to perform
> work-related activities. [82 Fed. Reg.] 49,462 at 49,464-66. The
> Commission stated:
>
>> Consistent with our regulations, we instruct our
>> adjudicators to <u>consider all of the evidence in an
>> individual's record</u> when they evaluate the intensity
>> and persistence of symptoms after they find that the
>> individual has a medically determinable
>> impairment(s) that could reasonably be expected to
>> produce those symptoms.  We evaluate the

---

[8] SSR 16-3p, applicable March 28, 2016, *see* 82 Fed. Reg. 49,462 (Oct. 25, 2017), supersedes SSR 96-7p and eliminates the use of the term "credibility," and clarifies that the subjective symptom evaluation is not an examination of the claimant's character. The ruling provides guidance as to how the Social Security Administration will evaluate statements regarding the intensity, persistence, and limiting effects of symptoms of disability.  The revised and republished SSR 16-3p indicates that the Social Security Administration's adjudicators will apply this ruling when they make decisions on or after March 28, 2016, and that when a decision is reviewed in federal court, the court will review the decision using the rules that were in effect when the decision under review was issued.  *See* <u>Arnold v. Soc. Sec. Admin., Comm'r</u>, 2018 WL 833982, at *8 (Feb. 13, 2018).  "Social Security Rulings are agency rulings 'published under the authority of the Commissioner of Social Security and are binding on all components of the Administration.' " <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 n.9 (1990) (quoting 20 C.F.R. § 422.408 (1989)).  Although not binding on the court, they are generally accorded deference.  <u>Fair v. Shalala</u>, 37 F.3d 1466, 1469 (11th Cir. 1994).

> intensity and persistence of an individual's
> symptoms so we can determine how symptoms limit
> ability to perform work-related activities for an adult
> . . . with a title XVI disability claim.

<u>Contreras-Zambrano v. Soc. Sec. Admin., Comm'r</u>, No. 17-12447, 2018

WL 618420, at *3 (11th Cir. Jan. 30, 2018) (emphasis added).  The ruling

states, "In considering the intensity, persistence, and limiting effects of an

individual's symptoms, we examine the entire case record, including the

objective medical evidence; an individual's statements about the intensity,

persistence, and limiting effects of symptoms; statements and other

information provided by medical sources and other persons; and any other

relevant evidence in the individual's case record."  SSR 16-3p (Mar. 28,

2016).  Social Security Ruling 16-3p further provides:

> In evaluating an individual's symptoms, it is not sufficient for our
> adjudicators to make a single, conclusory statement that "the
> individual's statements about his or her symptoms have been
> considered" or that "the statements about the individual's
> symptoms are (or are not) supported or consistent."  It is also
> not enough for our adjudicators simply to recite the factors
> described in the regulations for evaluating symptoms.  <u>The
> determination or decision must contain specific reasons for the
> weight given to the individual's symptoms, be consistent with
> and supported by the evidence, and be clearly articulated so
> the individual and any subsequent reviewer can assess how the
> adjudicator evaluated the individual's symptoms.</u>

SSR 16-3p (applicable Mar. 28, 2016) (emphasis added).  SSR 16-3p

cautions that "we will not disregard an individual's statements about the

intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms. A report of minimal or negative findings or inconsistencies in the objective medical evidence is one of many factors we must consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms."[9] *Id.* at ¶ 1 (citing 20 C.F.R. 404.1529).

Thus, in providing the reasons required under SSR 16-3p for discounting the Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms, the ALJ is directed to consider all the evidence and clearly articulate the record-based reasons for the weight given to the claimant's symptoms to enable the reviewing body to assess how the adjudicator evaluated the medical symptoms. In the present case, the Court "cannot discern from the ALJ's scant analysis in this case whether [he] considered and dismissed, or completely failed to consider," the body of pertinent longitudinal treatment records documenting symptoms and treatment for Plaintiff's rheumatoid arthritis and fibromyalgia when evaluating her statements about the intensity, persistence, and limiting

---

[9] The ALJ relied primarily on his conclusion that the medical reports showed Plaintiff had only "some limited range of motion" to support his finding that Plaintiff did not have the "kind of severe restriction expected in light of the severity of Plaintiff's testimony." Tr. 22. The focus on that consideration, which is only one of many factors, does not meet the letter or the spirit of SSR 16-3p or 20 C.F.R. 404.1529, which call for consideration of all the evidence in the record.

effects of her symptoms. *See* <u>Minnick v. Colvin</u>, 775 F.3d 929, 936 (7th Cir. 2015). Without more, the ALJ's meager discussion of only a small portion of the medical evidence fails to inform the Court in a meaningful, reviewable way of the specific evidence the ALJ considered and relied on in determining that the claimed intensity, persistence, and limiting effects of Plaintiff's symptoms were not supported by the body of evidence in the record. *See, e.g., id.* at 937.

Plaintiff has consistently reported her symptoms both before and after her diagnoses. She consistently saw her specialists and sought more effective treatment modalities in order to alleviate her symptoms. She took the many medications as prescribed and as those prescriptions were changed over the course of her treatment, and she received other treatments by way of injection—all over a lengthy period of time. "Persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent." SSR 16-3p, ¶ 7.

The evidence of specialists and treating physicians is to be given greater weight than those of other physicians because specialized

knowledge is particularly important with respect to a disease such as fibromyalgia, which is often poorly understood. <u>Benecke</u>, 379 F.3d at 594 n.4. In this case, the Court cannot discern in any meaningful fashion if the ALJ considered and gave weight to the longitudinal medical evidence of Plaintiff's treating physicians—specialists in rheumatology and fibromyalgia—in evaluating Plaintiff's statements of the intensity, persistence, and limiting effect of her symptoms. For this reason, and considering the record as a whole, the Court cannot conclude that the ALJ's decision to discount Plaintiff's testimony, and the resulting finding that she is not disabled, is based on substantial evidence. Thus, this matter will be reversed and remanded for further proceedings.

### B. The combination of Plaintiff's impairments.

Plaintiff also alleged error in the ALJ's step-four analysis of the effect of her impairments when considered in combination. As discussed above, on this record and in light of the ALJ's findings, substantial evidence does not support the ALJ's Step 5 determination and he did not correctly follow the law. In light of this conclusion, and because the decision is reversed and remanded for further proceedings, it is not necessary to consider this remaining issue raised by Plaintiff.

## IV. Conclusion

Considering the record as a whole, the decision of the Administrative Law Judge is not supported by substantial evidence in the record and application of the proper legal standards.  Accordingly, pursuant to sentence four of 42 U.S.C § 405(g), the decision of the Commissioner to deny Plaintiff's application for a period of disability and disability benefits is **REVERSED** and **REMANDED** to the Commissioner for further proceedings consistent with this opinion and to consider referring Plaintiff for a consultative examination.  The Clerk is **DIRECTED** to enter judgment for Plaintiff.

**IN CHAMBERS** at Tallahassee, Florida, on April 12, 2018.

**s/  Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**